UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAN-LIN LLC, a California limited liability company,<br><br>               Plaintiff,<br><br>v.<br><br>MICHAEL DIAMOND, an individual, CHAMP SPORTFISHING LLC, a California limited liability company,<br><br>               Defendants. | Civil No. 06CV143-L(LSP)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISSING ACTION** |

Defendants filed a motion to compel arbitration and stay this action. Plaintiff opposed the motion, and Defendants filed a reply. For reasons stated below, Defendants' motion to compel arbitration is **GRANTED**. Since all causes of action are subject to arbitration, this action is **DISMISSED**.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

06c143

**FACTUAL[1] AND PROCEDURAL BACKGROUND**

Plaintiff and Defendant Michael Diamond ("Diamond") entered into an option agreement regarding the purchase of a commercial fishing vessel, the Jan-Lin. The agreement is memorialized as the Option Agreement Regarding Purchase of Vessel, dated April 14, 2003 ("Option Agreement"). (Defs' Lodgment Ex. A.) At the same time, the parties entered into an Agreement Regarding Lease/Charter of Vessel ("Lease/Charter Agreement"). (Heying Decl. Ex. C.)

The Option Agreement provides in pertinent part:

> DIAMOND shall have the option to purchase the Vessel for the sum of $160,000, which price includes the improvements to be made under the Lease/Charter Agreement. DIAMOND agrees to exercise this Option by December 1, 2010. DIAMOND shall receive a credit towards the purchase price as set forth in the attached schedule. [¶] . . .
>
> Should DIAMOND exercise the option prior to December 1, 2010, the buyout balance, or the percentage ownership interest of DIAMOND at that time, shall be calculated based on the most recent payment of DIAMOND. . . . Should DIAMOND fail to complete all payments under the Lease/Charter Agreement, or under the attached schedule, DIAMOND's entire interest, if any, shall revert to JAN-LIN, LLC.

(Defs' Lodgment Ex. A ¶ 2:01.) The scheduled payments were $11,400 per month. (*Id.*, attached schedule of payments.)

The Lease/Charter Agreement provides "JAN-LIN, LLC is, and shall remain, one hundred percent (100%) owner of the Vessel, **subject to any other options or agreements the parties may enter into**." (Heying Decl. Ex. C ¶ 2:01 (emphasis added).) The Lease/Charter Agreement gave exclusive use of the Jan-Lin to Diamond, together with sole responsibility for its management and operation. (*Id.* ¶¶ 2:06, 2:03.) In addition, Diamond was to bear all expenses of operation and net losses, and keep any net profits. (*Id.* ¶¶ 2:04, 2:05, 2:07, 2:09.) In exchange, Diamond was to pay a monthly lease/charter fee of $1,900. (*Id.* ¶ 2:06). "Upon any payment becoming more than sixty (60) days late, [the] Agreement [would] terminate and

---

[1] The facts underlying this action are disputed, and are recited herein only to provide the context of the action. The factual background is not intended as and does not constitute findings of fact.

DIAMOND [would] waive any and all interest in the Vessel." (*Id.* (emphasis added).) Furthermore, upon Plaintiff's request, Diamond was to make improvements to the vessel equal to 20% of the original purchase price. (*Id.* ¶ 2:08.) Plaintiff was to "provide the funds to make these improvements . . . provided the monthly payments from DIAMOND are current. Said improvements will be completed within . . . the Capital Construction fund [*sic*] guidelines." (*Id.*)

The Lease/Charter Agreement contained an option provision:

> Except as provided for herein, neither party shall transfer or assign their respective lease/charter or ownership interest in the Vessel to any third parties. On December 1, 2010, DIAMOND <u>must</u> exercise the option to purchase JAN-LIN, LLC's interest in the Vessel, at a fair market value price to be mutually agreed upon.

(*Id.* ¶ 3:01 (emphasis in original).)

Both agreements included an identical arbitration clause:

> Any controversy or claim arising out of or relating to this contract, or any breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association . . ..

(Defs' Lodgment Ex. A ¶ 3:01; Heying Decl. Ex. C ¶ 4:01.)

On March 1, 2003, Plaintiff's Managing Member, John F. Heying ("Heying") and Diamond signed an "informational letter." Among other things, the letter indicates the Jan-Lin would be sold to Diamond for $160,000, whereby Diamond would be making payments listed on the schedule attached to the Option Agreement. (Defs' Lodgment Ex. B.) The letter also states Heying would document the boat on December 1, 2003 to show Diamond's share. (*Id.*) Diamond interprets this document as showing he exercised his option pursuant to the Option Agreement. He made payments pursuant to the Option Agreement schedule until June 1, 2005. (Decl. of Michael Diamond in Supp. of Mot. to Set Aside Default ("Diamond Decl.") ¶ 6.)

In 2005 Plaintiff entered into negotiations to sell the Jan-Lin to a third party, and reached an agreement on May 14, 2005. (Am. Compl. ¶¶ 17, 39.) In June, Plaintiff refused Diamond's payment pursuant to the Option Agreement.[2] (Diamond Decl. ¶ 6.) On September 30, 2005,

---

[2] Plaintiff's explanation is that it received a letter from Diamond's wife on Defendant Champ Sportfishing, LLC ("Champ") letterhead indicating neither Champ nor Ms. Diamond would make the June payment. (Decl. of John F. Heying in Supp. of Jan-Lin LLC's Opp'n to Defs' Mot. to Set Aside Default Ex. C.) Ms. Diamond indicated she understood this

Diamond filed a maritime lien on Champ's behalf against the Jan-Lin based on a Capital Construction Fund claim in the amount of $165,000.  (Am. Compl. Ex. A.)

On January 20, 2006, Plaintiff filed a declaratory relief action in this court, seeking a declaration that the lien was invalid.  The complaint alleged, among other things, that there was no agreement between Champ and Plaintiff giving rise to any right, title or interest in the vessel.  (Compl. ¶¶ 7-9; Am. Compl. ¶¶ 13, 15 .)  Plaintiff alleges it is the sole owner of the Jan-Lin, and the lien impairs its ability to sell it.  (*Id*. ¶¶ 3, 10; Am. Compl. ¶¶ 4, 15.)

On January 21, 2006, Diamond delivered a hand-written letter to Plaintiff demanding arbitration per the purchase agreement, and providing notice that a lien was filed on the Jan-Lin until the ownership dispute was resolved.  (Defs' Lodgment Ex. B, Diamond Decl. ¶ 8.)  On January 25, 2006, Plaintiff's counsel sent a letter to Diamond stating that his handwritten letter did not conform to the AAA rules.  (Wright Decl. Ex. A; Diamond Decl. ¶ 8.)  Diamond did not respond, and did not make any filings with the American Arbitration Association.

On March 24, 2006, Champ had removed its lien, and Diamond filed an identical lien in his individual capacity.  (Am. Compl. ¶¶ 21, 22 and Ex. B.)  On May 18, 2006, Plaintiff filed an amended complaint to add Diamond as a party, reference the new lien, and add state law causes of action for intentional interference with prospective economic advantage and slander of title.

**DISCUSSION**

Defendants seek to enforce the arbitration clause in the Option Agreement and the Lease/Charter Agreement, and compel arbitration.  Plaintiff opposes the motion on three grounds.  First, Plaintiff maintains that while the court has subject matter jurisdiction over the pending amended complaint, it lacks subject matter jurisdiction to rule on Defendants' motion to compel arbitration.  Second, although Diamond has made an arbitration demand, Plaintiff contends Defendants have waived any right to compel arbitration.  Last, Plaintiff argues the
/ / / / /

---

would "negate[] any contract we had."  (*Id*.)

instant action is not within the scope of the arbitration clause. The court disagrees with all three arguments.

## I. Subject Matter Jurisdiction and Applicable Law

Plaintiff challenges the court's subject matter jurisdiction to address Defendants' motion. Generally, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA") does not create an independent basis for federal subject matter jurisdiction. *Southland Corp. v. Keating*, 465 U.S. 1, 16 n. 9 (1984) (*citing* 9 U.S.C. §§ 3, 4). However, when the case is not an independent action to enforce an arbitration provision, but a motion in an already pending federal action, as is the case here, the district court does not need a separate basis of subject matter jurisdiction. *See id.; see also* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* ¶ 16:62.1 (2006). Plaintiff's reliance on *Kehr v. Smith Barney Harris Upham & Co., Inc.* and *Westmoreland Capital Corp. v. Findlay* is misplaced. Unlike in this case, in *Kehr*, the issue was arbitration of state law claims which the court had dismissed after declining to exercise supplemental jurisdiction. 736 F.2d 1283, 1285, 1287 (9th Cir. 1984). Again unlike in this case, *Westmoreland* was an independent action under the FAA, rather than a motion in an already pending federal action. 100 F.3d 263 (2nd Cir. 1996). In this case, Plaintiff filed a federal action and Defendants filed a motion to compel arbitration of Plaintiff's claims. It is undisputed the court has subject matter jurisdiction over Plaintiff's federal and pendent state law claims pursuant to 28 U.S.C. §§ 1331 and 1367. Accordingly, the court has subject matter jurisdiction to address Defendants' motion.

Both parties maintain California law applies to Defendants' motion. They argue the FAA does not apply because the contract in dispute this action does not involve interstate commerce. (Defs' P.&A. at 3, Pl.'s P.&A. at 9.) The argument is based on 9 U.S.C. § 2, which provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

/ / / / /

The cases cited in support of the argument predate the current interpretation of "involving commerce," which was articulated in *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265 (1995). *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001) ("*Allied-Bruce . . .* consider[ed] the significance of Congress' use of the words "involving commerce" in § 2.").

The FAA "is based upon and confined to the incontestable federal foundations of control over interstate commerce and over admiralty." *Allied-Bruce*, 513 U.S. at 271 (internal quotation marks and citation omitted). The term "involving commerce" in the FAA is interpreted to "signal the broadest permissible exercise of Congress' Commerce Clause power." *The Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). "Because the statute provides for enforcement of arbitration agreements within the full reach of the Commerce Clause, it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' – that is 'within the flow of interstate commerce.'" *Id*. (internal quotation marks and citations omitted). The application of the FAA is not defeated where the individual transaction at issue, taken alone, does not have a "substantial effect on interstate commerce:"

> Congress' Commerce clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control. Only that general practice need bear on interstate commerce in a substantial way.

*Id*. at 56-57 (internal quotation marks, ellipsis and citations omitted). Based on the broad scope of FAA's reach, contracts such as a homeowner's fumigation contract, *Allied-Bruce*, 513 U.S. 265, and employment contract for a "sales counselor" position in a retail store, *Circuit City*, 532 U.S. 105, were held to involve commerce for purposes of the FAA.

The instant case arises out of Diamond's claim of ownership in the Jan-Lin, a fishing vessel, and his subsequent filing of a lien against the vessel. There is no question the fishing industry bears on interstate commerce in a substantial way. Furthermore, fishing vessels, including documentation of their ownership and encumbrances, are subject to federal control and are regulated by federal law. *See* 46 U.S.C. § 12101 *et seq.* (documentation); 46 U.S.C. § 31301 *et seq.* (commercial instruments, including liens); *see also, e.g.,* 46 U.S.C. § 4501 *et seq.*

/ / / / /

Accordingly, the transaction evidenced by the Agreements involves commerce for purposes of the FAA.

The choice of law provisions in the Agreements do not take them outside the FAA's reach. The Agreements include identical "Governing Law" provisions among their "Miscellaneous Provisions." (Defs' Lodgment Ex. A ¶ 4:02; Heying Decl. Ex. C ¶ 5:02.) They provide that the Agreements "shall be governed by the laws of California, U.S.A." (Defs' Lodgment Ex. A ¶ 4:02; Heying Decl. Ex. C ¶ 5:02.) General choice of law clauses such as this do not incorporate state arbitration law. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130-31 (9th Cir. 2000) (*citing Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995); *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1212-13 (9th Cir. 1998)); *see also Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002). Accordingly, the FAA, rather than state arbitration law, applies to this case.

## II. Arbitrability of the Claims

Defendants move to compel arbitration of the claims in the amended complaint. This motion is governed by 9 U.S.C. Section 4, which provides in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . .

Accordingly, the court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. The merits of the claims presented and any defenses to them are left to the arbitrator. *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991).

### A. Waiver

Plaintiff contends Defendants waived their right to compel arbitration. Waiver of the right to compel arbitration is controlled by the FAA rather that state law. *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002). Allegations of waiver must be resolved in

light of the FAA's preference for arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Accordingly, courts do not lightly find waiver of the right to arbitrate. *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 724 (9th Cir. 2000).

The party seeking to prove waiver must show the following:

> (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. The party arguing waiver of arbitration bears a heavy burden of proof.

*Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990).

On January 21, 2006, Diamond delivered a handwritten letter to Plaintiff, stating in pertinent part: "Per the purchase agreement I respectfully request arbitration listed in point 4:01 to resolve the ownership matter of the Jan-Lin." (Defs' Lodgment Ex. B.) On January 25, 2006, Plaintiff's counsel responded that the handwritten letter did not comply with the AAA rules, and that Plaintiff would not make a further response to it. (Wright Decl. Ex. A.) The letter also informed Diamond that Plaintiff filed an action in federal court, and enclosed the complaint. (*Id.*) Subsequently, Plaintiff engaged in various attempts to serve Defendants with the lawsuit, and obtained the entry of default on July 21, 2006.[3] On July 21, 2006, Defendants' counsel wrote to Plaintiff's counsel informing him he had secured a hearing date for a motion to compel arbitration. (Notice of Lodgment in Supp. of Mot. to Set Aside Default Ex. E.) On July 24, 2006, Defendants filed Defendants' Notice of Appearance to Prevent Entry of Default, which also stated the hearing date for the instant motion. Defendants filed the motion on October 6, 2006.

Defendants argue Diamond knew, presumably based on the January 25 letter (Wright Decl. Ex. A), that his handwritten letter demanding arbitration was insufficient under the AAA rules, he did not file a motion to compel arbitration until October 6, 2006, and has not filed a petition with the AAA. Plaintiff also argues Diamond's withdrawal of Champ's lien and concurrent filing of a lien in his own name was inconsistent with his claimed right to arbitrate,

---

[3] For the reasons stated in a separate order, the entry of default was set aside.

and that Defendants' apparent reluctance to engage in litigation in this court was somehow inconsistent with their claimed right to arbitration. Plaintiff claims, without elaborating, that it was prejudiced because it spent considerable time and money in pursuing the instant action. These arguments are insufficient to meet Plaintiff's heavy burden of proof.

Based on Diamond's handwritten arbitration demand, there is no denying Defendants knew of their right to arbitration. This, however, is not fatal to their effort to defeat waiver. *See Chappel*, 232 F.3d at 724.

Contrary to Plaintiff's argument, lack of cooperation with the litigation process, while nothing to be commended, is not necessarily inconsistent with the claimed right to arbitration. *See Britton*, 916 F.2d at 1413 (avoidance of discovery). Defendants maintained they had not been properly served with process, and therefore refused to make an appearance until the entry of default was imminent.[4] Once forced to make an appearance, Defendants immediately sought a hearing date on a motion to compel arbitration. Similarly, filing of a lien to protect the claimed ownership interest in the vessel was no less consistent with arbitration than it is with litigation, it was apparently used as a means to preserve status quo pending the resolution of the ownership dispute. Defendants' conduct in this case, while far removed from exemplary, was not inconsistent with their right to compel arbitration.

Plaintiff also claims it was prejudiced by Defendants' conduct because it spent considerable time and money pursuing litigation in the instant court. *Britton* found a similar argument "unpersuasively conclusory." 916 F.2d at 1413. Furthermore, like in *Britton*, it was Plaintiff who refused to arbitrate upon receipt of Diamond's handwritten letter. *See id.* The costs Plaintiff incurred in pursuing litigation therefore should not count against Defendants' effort to avoid it. *See id.* Plaintiff failed to make the requisite showing of prejudice. Even if Plaintiff made a sufficient showing on the inconsistent conduct element, an insufficient showing

---

[4] The Clerk entered default on July 21, 2006, and Defendants' notice of appearance was filed the following business day, on July 24, 2006. Defendants explain they did not file their notice of appearance earlier because, as of close of business on July 21, 2006, the PACER system did not reflect the entry of default, and they believed that Plaintiff had withdrawn the request for entry of default or the Clerk concluded that Plaintiff's request for entry of default was premature. (Decl. of Patrick Webb in Supp. of Mot. to Set Aside Default ¶¶ 7, 8.)

on the prejudice element is a sufficient ground to find against waiver. *See Sovak*, 280 F.3d at 1270.

### B.     Scope of the Arbitration Clause

Plaintiff claims this action is not subject to arbitration because it is nothing more than an attempt to extinguish an invalid maritime lien, which has nothing to do with Defendants' claim Plaintiff breached its Agreements. The court disagrees.

State law contract interpretation principles apply to the interpretation of an arbitration agreement within the scope of the FAA. *Volt Info. Sci., Inc. v. Bd. of Tr. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989). Nevertheless, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Id*. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. - Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

The arbitration clause in this case provides for arbitration of "[a]ny controversy or claim arising out of or relating to this contract, or any breach thereof." (Defs' Lodgment Ex. A ¶ 3:01; Heying Decl. Ex. C ¶ 4:01.) Identical language is interpreted under California law as "unambiguous" and "very broad." *Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell*, 76 Cal. App. 4th 227, 229, 230 (1999).

The maritime liens at issue in this action arose out of the alleged breach of the parties' Agreements. Diamond apparently recorded the liens against the Jan-Lin in an attempt to preserve the status quo before Plaintiff's sale of the vessel to a third party, pending resolution of the dispute about the extent of Diamond's ownership interest. Diamond had been making payments to purchase the vessel pursuant to the Option Agreement. Based on the Option Agreement, the Lease/Charter Agreement precludes sale to a third party. Accordingly, the liens and the ownership dispute arise out of and are related to the Agreements and their alleged breach. The controversy alleged in the amended complaint would not have arisen but for the Agreements.

/ / / / /

Plaintiff maintains its claims based on allegedly invalid maritime liens can be resolved without reference to the Agreements. Plaintiff argues an owner of the vessel may not record a lien against it, and that Diamond's lien, since he allegedly asserts an ownership interest, cannot be valid, regardless of the Agreements. Whether Defendants had an ownership interest in the vessel or provided necessaries to the vessel within the scope of 46 U.S.C. Section 31342[5] so as to establish a valid maritime lien goes to the merits of the dispute, and is therefore an issue to be resolved by the arbitrator. *See Republic of Nicaragua*, 937 F.2d at 478.

Accordingly, the claims alleged in the amended complaint are covered by the arbitration clauses in both Agreements. Defendants' motion to compel arbitration is granted. Although Defendants requested a stay pursuant to 9 U.S.C. Section 3, the court finds a dismissal of the action more appropriate, since all of the claims are subject to arbitration. *See Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 637-38 (9th Cir. 1988).

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is **GRANTED**. This action is hereby **DISMISSED**.

**IT IS SO ORDERED**.

DATED: November 16, 2006

M. James Lorenz
United States District Court Judge

COPY TO:

HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

---

[5] This court expresses no opinion on the disputed factual issue regarding the existence or extent of Defendants' ownership interest in the Jan-Lin, or disputed legal issue whether a part-owner of a vessel can establish a valid maritime lien to secure his or her interest against another part-owner.